**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| DOROTHY FITZGERALD, | : | |
| Individually and as Administratrix of | : | |
| the Estate of WILLIAM VANCE | : | |
| FITZGERALD, JR., deceased, | : | |
| | : | CIVIL ACTION NO. |
| Plaintiffs, | : | 1:10-CV-1686-RWS |
| | : | |
| v. | : | |
| | : | |
| US EXPRESS, INC., *et al.*, | : | |
| Defendants. | : | |

## ORDER

This case comes before the Court on Defendants Larry Burris and Carl

Burrow's Motion to Dismiss [13], Defendant Phil Summers' Motion to Dismiss

[14], Defendant Catoosa County, Georgia's Motion to Dismiss [15], Defendants

Larry Burris, Carl Burrow, Phil Summers, and Catoosa County, Georgia's ("the

County Defendants") Motion to Stay Discovery [16], and Plaintiffs' Motion for

Leave to Amend Complaint to Add Defendant Phil Summers in his Individual

Capacity [42]. After a review of the record, the Court enters the following

Order.

AO 72A
(Rev.8/82)

## I.  Factual Background

The relevant alleged facts are as follows.  On May 22, 2009, Catoosa County Sheriff's Deputy Timothy Busby was dispatched to a disabled vehicle owned and occupied by the Plaintiff, William V. Fitzgerald, Jr.. Compl., Dkt. No. [1] at ¶ 26.  After discovering that Mr. Fitzgerald had been reported missing and appeared to be disoriented, Busby requested emergency medical services to evaluate Mr. Fitzgerald. Id.  Afterwards, Busby took Mr. Fitzgerald's keys, secured his vehicle, and took him to the Catoosa County Sheriff's Office. Busby then placed a call to Mr. Fitzgerald's wife, Plaintiff Dorothy Fitzgerald, and asked her to come pick up her husband because the vehicle was disabled and Mr. Fitzgerald was not capable of operating his vehicle. Id. at ¶ 27.

The next day, at the conclusion of Busby's shift, Busby notified Deputy Sheriff Larry Burriss regarding Mr. Fitzgerald's situation and gave Burris Mr. Fitzgerald's keys. Id. at ¶ 28.  Burris then instructed an "unknown Catoosa County Deputy Sheriff" to contact Adult Protective Services ("APS"). Id.  At the same time, another Deputy Sheriff, Chris Melton, contacted APS who told Melton to bring Mr. Fitgerald to an emergency room. Id. at ¶ 29. However, this was not done. Id.

AO 72A
(Rev.8/82)

Instead, Burris told Deputy Sheriff Carl Burrow to give Mr. Fitzgerald his keys and to drive Mr. Fitzgerald to his vehicle. <u>Id.</u> at ¶ 30. When they arrived at the vehicle, it would not start and Burrow had to "jump start" the car. <u>Id.</u> at ¶ 31.  Then, Burris and Burrow escorted Mr. Fitzgerald to a gas station so that Mr. Fitzgerald could fill up his car.  <u>Id.</u>  Upon filling up, Burris and Burrow, in a county-owned vehicle, escorted Mr. Fitzgerald to Exit 345 on I-75. <u>Id.</u> at ¶ 32.  At mile marker 329, Mr. Fitzgerald's vehicle was struck by a tractor trailer and Mr. Fitzgerald died as a result. <u>Id.</u> at ¶¶ 5, 34-36.

On June 1, 2010, Plaintiffs filed this action bringing various constitutional, civil rights, and state-law claims.  As a result, all of the Catoosa County Defendants have filed Motions to Dismiss, and Plaintiffs have since moved to add Summers as a defendant in his individual capacity.  The Court will consider each of the motions in turn.

**II.  Discussion**

      <u>A. Motion to Dismiss</u>

         **1. Legal Standard**

When considering a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss, a federal court is to accept as true "all facts set forth in the plaintiff's

complaint." <u>Grossman v. Nationsbank, N.A.</u>, 225 F.3d 1228, 1231 (11th Cir. 2000) (citation omitted).  Further, the court must draw all reasonable inferences in the light most favorable to the plaintiff.  <u>Bryant v. Avado Brands, Inc.</u>, 187 F.3d 1271, 1273 n.1 (11th Cir. 1999); <u>see</u> <u>also</u> <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555-56 (2007) (internal citations omitted).  However, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" <u>Ashcroft v. Iqbal</u>, ___ U.S. ___, 129 S. Ct. 1937, 1949 (2009) (quoting <u>Twombly</u>, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" <u>Id.</u>

The United States Supreme Court has dispensed with the rule that a complaint may only be dismissed under Rule 12(b)(6) when "'it appears beyond doubt that the plaintiff can prove  no set of facts in support of his claim which would entitle him to relief.'" <u>Twombly</u>, 127 U.S. at 561(quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)).  The Supreme Court has replaced that rule with the "plausibility standard," which requires that factual allegations "raise the right to relief above the speculative level." <u>Id.</u> at 556.  The plausibility standard "does not[, however,] impose a probability requirement at the pleading

stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence [supporting the claim]." Id.

### 2. Claims against Catoosa County

Plaintiffs have alleged that the negligent use of a County vehicle caused Mr. Fitzgerald's injuries. See Pl.'s Opp. Br., Dkt. No. [23] at 6 n.1, 9 (verifying that they are not pursuing civil rights violations against the county and confirming that the violation only arises out of the "negligent use of a County-owned vehicle").  The County has asserted sovereign immunity, and in response, Plaintiffs argue that the County's immunity has been abrogated pursuant to O.C.G.A. § 33-24-51.

O.C.G.A. § 33-24-51 authorizes counties to purchase automobile-liability insurance to cover incidents arising out of the "operation or use of any [insured] motor vehicle" and waives their sovereign immunity "to the extent of the amount of insurance so purchased."  In determining whether a "use" has occurred, courts are to determine whether "the injury 'originated from,' 'had its origin in,' 'grew out of,' or 'flowed from' the use of the motor vehicle *as a vehicle*." Gish v. Thomas, 691 S.E.2d 900, 906 (Ga. Ct. App. 2010) (quoting Saylor v. Troup Cnty., 484 S.E.2d 298, 299 (Ga. Ct. App. 1997) (emphasis in the original).

5

Further, Plaintiffs must prove that this vehicle misuse was both the cause-in-fact and proximate cause of the Plaintiffs' injuries. <u>Lincoln Cnty. v. Edmond</u>, 501 S.E.2d 38, 40 (Ga. Ct. App. 1998).   And, the immunity is only waived if the insurance policy actually covers the accident. <u>Hicks v. Walker Cnty. Sch. Dist.</u>, 323 S.E.2d 231, 233 (Ga. Ct. App. 1984) (<u>citing</u> <u>Cobb Cnty. v. Hunt</u>, 304 S.E.2d 403 (1983)).  Importantly, though, the Georgia Court of Appeals has stated that in determining whether a "use" has occurred under the statute, and thus a waiver of immunity has occurred, courts are to strictly construe the provision against a finding of waiver. <u>Gish</u>, 691 S.E.2d at 906.

Plaintiffs' ultimate argument is that "but for" the Catoosa County Defendants' driving alongside Mr. Fitzgerald's car to assure that he left the County, Mr. Fitzgerald's accident with a third vehicle would not have occurred. This causation argument is simply too attenuated.  Plaintiffs do not allege that the county vehicle struck Mr. Fitzgerald's car or forced him off the road; rather, they argue that in making sure he crossed the county line, they caused him to be struck later by a third party. Putting Mr. Fitzgerald in his <u>own</u> allegedly mechanically defective vehicle in no way is part of any misuse of a <u>county</u> vehicle. Ultimately, the county vehicles were not even in the same county with

Mr. Fitzgerald when the accident occurred.  Therefore, proximate causation fails

and the claims against Catoosa County are **DISMISSED**.

### 3.  Federal Claims against Defendants Summers, Burrow and Burris

Plaintiffs bring their federal claims under 42 U.S.C. § 1983, a statutory

vehicle for addressing the violation of civil rights.  It provides as follows:

> Every person who, under color of any statute, ordinance, regulation,
> custom, or usage, of any State or Territory or the District of
> Columbia, subjects, or causes to be subjected, any citizen of the
> United States or other person within the jurisdiction thereof to the
> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an
> action at law, suit in equity, or other proper proceeding for redress .
> . .

42 U.S.C. § 1983.  "In order to prevail in a civil rights action under section 1983,

'a plaintiff must make a prima facie showing of two elements: (1) that the act or

omission deprived plaintiff of a right, privilege or immunity secured by the

Constitution or laws of the United States, and (2) that the act or omission was

done by a person acting under color of law.'" Marshall County Bd. of Educ. v.

Marshall County Gas Dist., 992 F.2d 1171, 1174 (11th  Cir. 1993) (quoting

Bannum, Inc. v. City of Ft. Lauderdale, 901 F.2d 989, 996-97 (11th  Cir. 1990)).

In Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989), the Supreme

7

Court held that "neither a State nor its officials acting in their official capacities are 'persons' under § 1983."

Here, Plaintiffs have alleged that Defendant Burris violated Mr. Fitzgerald's right to medical treatment under the Eighth and Fourteenth Amendments and that both Defendants Burris and Burrow violated Mr. Fitzgerald's substantive due process rights under the Fourteenth Amendment. Plaintiffs have brought these claims against Burris and Burrow in both their individual and official capacities. Additionally, Plaintiffs allege that Defendant Summers, in his official capacity, violated the Fourteenth Amendment by failing to properly train Defendant Burris and failing to implement policies dealing with the mentally ill. In response, Defendants argue that Plaintiffs have not alleged facts to support the substantive claims and, even assuming they have, qualified immunity applies because the rights were not "clearly established."

<u>a. Official Capacity Claims</u>

Absent abrogation of immunity by Congress, "[t]he Eleventh Amendment protects a State from being sued in federal court without the State's consent." <u>Manders v. Lee</u>, 338 F.3d 1304, 1308 (11th Cir. 2002). "It is also well-settled that Eleventh Amendment immunity bars suits brought in federal court when the

State itself is sued and when an 'arm of the State' is sued." Id.  "Georgia law recognizes its sheriffs as 'arms of the state.'" Rylee v. Chapman, 316 Fed. App'x  901, 905 (11th Cir. 2009) (citing Powell v. Barrett, 496 F.3d 1288, 1304 (11th Cir. 2007) (rev'd en banc on other grounds)).

Specifically in Manders, the Eleventh Circuit held that sheriffs are "arms of the state" for purposes of administering county jails and, as such, are entitled to Eleventh Amendment immunity.  In doing so, the court found important that the Georgia Constitution grants the State of Georgia the exclusive authority to establish and control a sheriff's power and duties, while "expressly prevent[ing] counties from controlling or affecting the sheriff's office or the personnel thereof." Manders, 338 F.3d at 1310.  The court went on to state "deputies, including those serving as jailers, are employees of the sheriff and not the county." Id. at 1113.  By this language, Manders indicates that its reasoning would apply to those to whom the sheriff delegates his authority. The Court concludes that Defendants Burrow, Burris, and Summers are entitled to Eleventh Amendment immunity. Accordingly, insofar as they seek dismissal on the official capacity claims, Defendants' Motions to Dismiss [13, 14] are hereby **GRANTED**.

9

### b. Failure to Provide Medical Care under the Eighth and Fourteenth Amendments

Plaintiffs also allege that Defendant Burris violated Mr. Fitzgerald's right to medical treatment under the Eighth Amendment. Generally, the Eighth Amendment only applies to incarcerated persons pursuant to a criminal conviction. <u>Ingraham v. Wright</u>, 430 U.S. 651, 671 n.40 (1977).  Plaintiffs acknowledge in their Response Brief that Mr. Fitzgerald was not in custody as a result of a criminal conviction, and thus, they do not have a claim pursuant to the Eighth Amendment.  <u>See</u> Dkt. No. [20] at 7 n.1.

However, Plaintiffs assert that Mr. Fitzgerald's right to medical care was violated under the Fourteenth Amendment.  Relying on <u>D.W. v. Rogers</u>, 113 F.3d 1214 (11th Cir. 1997), Plaintiffs assert that Mr. Fitzgerald was in the custody of the Sheriff's office such that the officers had a duty to assure adequate medical care for him.  In <u>Rogers</u>, the court held that a person with mental illness who was involuntarily committed was in state custody for Fourteenth Amendment purposes once he was actually admitted to the hospital. <u>Id.</u> at 1219.  "[T]he right to treatment 'is triggered by the deprivation of liberty that generally results from commitment.' . . . The affirmative duty to protect

arises not from the State's knowledge of the individual's predicament or from its expressions of intent to help him, but from the limitation which it has imposed on his freedom to act on his own behalf." Id. at 1218.

Plaintiffs have alleged that Mr. Fitzgerald was taken to the police station and the police "assumed responsibility for [his] well-being" while he was there. Cmpl., Dkt. No. [1] at ¶¶ 27-28. Moreover, Mr. Fitzgerald's keys were taken from him so his ability to leave was severely hampered since he lived hours away. Id. Taking the Plaintiffs' allegations as true, Plaintiffs have sufficiently alleged that Mr. Fitzgerald was in the County Defendants' physical custody while at the station to trigger Fourteenth Amendment scrutiny.

"[T]he standard for providing basic human needs to those incarcerated or in detention is the same under both the Eighth and Fourteenth Amendments." Marsh v. Butler County, Ala., 268 F.3d 1014, 1024 n.5 (11th Cir. 2001). In order survive on such an inadequate medical treatment claim, Plaintiffs must show: "(1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." Mann v. Taser Int'l, Inc., 588 F.3d 1291, 1306-07 (11th Cir. 2009). "A serious medical need is one that has been diagnosed by a physician as mandating

11

treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Id. (internal quotations omitted). Alternatively, a serious medical need can be determined by "whether a delay in treating the need worsens the condition." Id. "In either case, the medical need must be one that, if left unattended, poses a substantial risk of serious harm." Id. "It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishment Clause." Whitley v. Albers, 475 U.S. 312, 319 (1986).

Plaintiffs have not alleged a serious medical need. At most, Plaintiffs have alleged that Mr. Fitzgerald "appeared lost and disoriented." Cmpl., Dkt. No. [1] at ¶ 26. This is neither a condition that is so obvious a lay person would recognize a necessity for doctor's treatment or for which a delay in treatment would worsen the harm. Moreover, "appear[ing] lost and disoriented" is not a need that posed a substantial risk of serious harm if Mr. Fitzgerald did not receive treatment. The Court recognizes that Mr. Fitzgerald later died from injuries that occurred in a collision after he was returned to his vehicle. While these circumstances are relevant to the negligence issues in the case, this injury

12

is not a risk of harm reasonably foreseen as a result of a failure to receive treatment.

Based on the foregoing, Plaintiffs' Eighth and Fourteenth Amendment claims for failure to provide medical care are **DISMISSED**.

c.  Fourteenth Amendment Substantive Due Process Claim

Plaintiffs have additionally alleged substantive due process violations of the Fourteenth Amendment against Summers, Burris, and Burrow.  "The substantive component of the Due Process Clause protects those rights that are fundamental, that is, rights that are implicit in the concept of ordered liberty," or, alternatively, "those rights created by the Constitution." McKinney v. Pate, 20 F.3d 1550, 1556 (1994) (internal quotations omitted). "Officials acting under the color of state law violate the substantive component of the Due Process Clause only when their conduct can properly be characterized as arbitrary, or conscience shocking, in a constitutional sense."  Peterson v. Baker, 504 F.3d 1331, 1336 (11th Cir. 2007) (internal quotations omitted).  Moreover, "Section 1983 must not be used as a font of tort law to convert state tort claims into federal causes of action. . . . [E]ven intentional wrongs seldom violate the Due Process Clause." Id. (citation and internal quotations omitted); see Porter v. White, 483 F.3d

13

1294, 1307 (11th Cir. 2007) (quoting Daniels v. Williams, 474 U.S. 327, 328

(1986), for proposition that the "Due Process Clause is simply not implicated by

a negligent act of an official causing unintended loss of or injury to life, liberty,

or property ").

  While the Defendants' conduct in placing a knowingly confused man back

in his vehicle instead of giving him medical care and assuring he left the county

raises negligence concerns, these actions do not rise to the level of "arbitrary" or

"conscience shocking." The Eleventh Circuit has set a high bar for "conscience

shocking behavior." In Dacosta v. Nwachukwa, 304 F.3d 1045 (11th Cir. 2002),

a college student brought a Section 1983 claim against her professor.  The

college student had followed her professor out of the classroom after the

professor had ignored her questions during class.  Id. at 1047.  The professor

then ran back into the classroom, slamming the door on the student's arm and

lodging her arm in the door's window pane.  Id.  After the professor was unable

to dislodge the student from the door by violently swinging the door back forth

repeatedly, the professor cracked through the window pane and shoved the

student's face.  Id.  The Eleventh Circuit held that this actual infliction of injury

did not rise to the "conscience-shocking" level to trigger constitutional scrutiny.

AO 72A
(Rev.8/82)

Id. at 1049.  The present case does not even involve an actual infliction of injury.

Rather, as alleged, this case involves the placement of Mr. Fitzgerald in an

opportunity for further harm to be inflicted by a then-unknown third party.

These actions do not substantiate a constitutional violation.  Therefore,

Plaintiffs' remaining Fourteenth Amendment claims are **DISMISSED**.

<u>d.  Qualified Immunity</u>

Even if Plaintiffs have alleged substantive violations of the Fourteenth

Amendment, their claims would still fail due to qualified immunity. Qualified

immunity protects government officials performing discretionary functions from

being sued in their individual capacities. <u>Wilson v. Layne</u>, 526 U.S. 603, 609

(1999).  Public officials are shielded under qualified immunity  so far as "their

conduct does not violate clearly established statutory or constitutional rights of

which a reasonable person would have known." <u>Harlow v. Fitzgerald</u>, 457 U.S.

800, 818 (1982).  Qualified immunity is a question of law for the court. <u>Post v.

City of Ft. Lauderdale</u>, 7 F.3d 1552, 1557 (11th Cir. 1993).

The Eleventh Circuit utilizes a two-part analysis for the defense of

qualified immunity.  First, the defendant official must prove that he was acting

within the scope of his discretionary authority when the allegedly wrongful acts

occurred.  Hartsfield v. Lemacks, 50 F.3d 950, 953 (11th Cir. 1995).  If the

defendant meets this burden, the plaintiff must then demonstrate that the

defendant violated clearly established law based upon objective standards.  Id.

The Court concurs with Defendants' contention that the actions taken in

this case constituted discretionary functions, and therefore the Court considers

only whether Defendants violated clearly established law in failing to provide

Mr. Fitzgerald medical care and taking him back to his vehicle while assuring he

left the County.  The Court does not find these actions to violate clearly

established law.  First, Plaintiffs have not plead facts which support a claim that

Mr. Fitzgerald had a serious medical need.  Therefore, the Plaintiffs did not have

notice that they owed Mr. Fitzgerald any duty to provide medical care.  Second,

Defendants did not have a "fair and clear warning" that placing Mr. Fitzgerald

back in his vehicle and assuring he left the County would be a constitutional

violation.  Therefore, Defendants are entitled to qualified immunity as to the

Fourteenth claims of Plaintiffs.

B.  Motion to Amend

Plaintiffs have additionally moved to amend their Complaint to add

Defendant Phil Summers in his individual capacity.  Defendants argue that the

16

amended complaint lacks "good cause" under the local rules and the Preliminary Report and Discovery Plan [26] and is futile under Rule 15.  Plaintiffs respond that the "good cause" standard should not apply because a scheduling order has not been entered and the complaint is not futile.

First, this Court agrees with Plaintiffs that a scheduling order has not been issued in this case.  See FED. R. CIV. PRO. 16(b)(1) (" . . . the <u>district judge–or a magistrate judge</u> when authorized by local rule–must issue a scheduling order . . .") (emphasis added).  Though a Preliminary Report and Discovery Plan was filed, no scheduling order has been entered.  As such, Rule 16(b)'s "good cause" standard does not apply.

Additionally, because the Plaintiffs have sought leave of court to file this amendment, the Plaintiffs' amendment would be proper assuming the Court granted leave.  See LR 7.1(A)(2), NDGa ("All other motions must be filed WITHIN THIRTY (30) DAYS after the beginning of discovery unless the filing party has obtained prior <u>permission of the court</u> to file later.") (emphasis added). Therefore, the Plaintiffs' motion will be governed by Rule 15.

Rule 15 directs the Court to "freely give leave when justice so requires." FED. R. CIV. P.  15(a)(2).  Despite an instruction that leave should be freely

17

given when justice so requires, leave to amend is "by no means automatic." Layfield v. Bill Heard Chevrolet Co., 607 F.2d 1097, 1099 (5th Cir. 1979).  The trial court has "extensive discretion" in deciding whether to grant leave to amend.  Campbell v. Emory Clinic, 166 F.3d 1157, 1162 (11th Cir. 1999).  A trial court may choose not to allow a party to amend "when the amendment would prejudice the defendant, follows undue delays or is futile."  Id.  A claim is futile if it cannot withstand a motion to dismiss.  Fla. Power & Light Co. v. Allis Chalmers Corp., 85 F.3d 1514, 1520 (11th Cir. 1996); see Burger King Corp. v. Weaver, 169 F.3d 1310, 1315 (11th Cir. 1999) (futility is another way of saying "inadequacy as a matter of law").

As to the federal claim, the County Defendants argue that adding Phil Summers in his individual capacity is futile because Plaintiffs have not alleged that Mr. Summers personally participated in the conduct which led to Plaintiffs' federal Section 1983 claim, any substantive constitutional allegation is meritless, and even assuming a right to medical care was found, Defendant Summers would be protected by official immunity because the right was not clearly established.  For the merits of these arguments, both parties incorporated by reference their briefs in the Motion to Dismiss for Defendants Summers, Burris,

and Burrow.  <u>See</u> Dkt. Nos. [45] at 9; [47] at 7-8.  Because the Court has rejected Plaintiffs' arguments on these issues above, the Court finds that adding Defendant Summers in his individual capacity would be futile.  Therefore, Plaintiffs' Motion to Amend [42] is **DENIED**.

### C.  Subject Matter Jurisdiction

Based on the foregoing rulings, all of the claims arising under federal law have been dismissed.  As a result, this Court no longer has subject matter jurisdiction over this action. <u>See</u> Cmpl., Dkt. No. [1] at ¶¶ 20-22 (basing this suit's subject matter jurisdiction in the original jurisdiction of this court to hear claims arising out of federal law and specifically federal civil rights claims, and its supplemental jurisdiction to hear claims arising out of the common nucleus of operative facts).  Therefore, the Court will **DISMISS, without prejudice** the remainder of this  action for lack of subject matter jurisdiction and will not address the issues in Defendants' motions to dismiss related to their state-law claims.  Plaintiffs may bring their state-law claims in a Georgia court.

### D.  Motion to Stay Discovery

Additionally, the County Defendants have moved to stay all discovery until the dispositive motions have been ruled upon.  Because the Court has ruled,

and the Court now lacks a jurisdictional basis to proceed with this suit, this motion (Dkt. No. [16]) is now **MOOT**.

## III.  Conclusion

Defendant Catoosa County's Motion to Dismiss [15] is **GRANTED** based upon sovereign immunity.  Further, Defendants Burrow, Burris, and Summers' Motions to Dismiss [13, 14] are **GRANTED** in so far as they address any federal cause of action.  Additionally, Plaintiff's Motion to Amend [42] is **DENIED** as futile, and the County Defendants' Motion to Stay Discovery [16] is now **MOOT**.  As a result of the foregoing decisions, this Court will **DISMISS**, **without prejudice**  the Plaintiffs' remaining claims for lack of subject matter jurisdiction.  The Clerk is directed to close this case.

**SO ORDERED** this   21st   day of January, 2011.


_____
RICHARD W. STORY
UNITED STATES DISTRICT JUDGE

20

AO 72A
(Rev.8/82)